### Ponce *et al. vs.* Wiley *et al.*, ex'rs, *et al.*

1. The ordinary's direction to compromise a *doubtful debt* belonging to an estate is worth nothing to the executor, unless it appears that section 2539 of the Code has been complied with. One of the requisites is, that the executor, on making his returns, shall make cath that the settlement was in good faith, and to the best interest of the parties represented.

2. Evidence of the market value of land at private sale tends to illustrate its true value, and its true value is relevant upon the question of what it would probably bring at public sale under legal process.

Administrators and executors. Compromise and settlement. Sales. Evidence. Before Judge Pottle. Hancock Superior Court. October Adjourned Term, 1877.

Dimas R. Ponce and others, legatees under the will of Dimas Ponce, deceased, filed their bill against Samuel H. and William G. Wiley, the executors, Adolphus A. Underwood and wife, Charlotte A. Underwood, and Caroline S. Atwater, making, in brief, the following case :

Ponce died in October, 1865, leaving a will appointing the Wileys executors. They qualified and took possession of the estate. Among the assets were two notes made by Underwood, each for $2,000.00, dated October 19, 1860, and due on the 1st of January, 1863 and 1864. respectively.

These notes were given in part payment for the Pleasant Valley plantation, comprising about eight hundred acres, and were secured by mortgage thereon. They were thus collectible. For three years and a half after their qualification, the executors took no steps whatever to collect, but on April 5th, 1869, applied to the court of ordinary for an order authorizing them to compromise said claim. The petition simply stated that the plantation mortgaged was

growing more and more dilapidated and less valuable for cultivation. Upon this petition the court ordered that the executors " have leave to compromise said claim as in their judgment will best subserve the interest of said estate." On the same day they sold and transferred the claim to Charlotte A. Underwood and Caroline S. Atwater for and in consideration of the sum of $2,000.00. (The bill here gives the history of the sale of the land under an execution against Underwood, subject to the mortgage, and of the conveyance of the title by the purchaser at that sale to Caroline S. Atwater, charging notice, etc.) The executors have only made returns on July 6th, 1868, on June 17th, 1869, on July 4th, 1870, on June 17th, 1871, and on July 7th, 1873. In the last return they admitted that they had in hand $724.00 belonging to the estate. The above described disposition of the notes and mortgage was not a compromise thereof, but a sale. All of the defendants are insolvent except Caroline S. Atwater. They pray an accounting with the executors, the cancellation of the transfer of the notes and mortgage, and an account from the transferees of any sums of money which they may have derived from such transfer, etc.

The answers did not materially vary the case made by the bill, except by a denial of the value of the notes and mortgage as therein charged, and by the assertion that the compromise made was for the best interest of the estate. The defendants insisted that the disposition of the claim in controversy was, in fact, a compromise.

The issues presented, as passed upon by this court, may be narrowed to two : 1st. Whether the claim had been compromised as provided by §2539 of the Code? 2nd. What the land covered by the mortgage was worth?

On the first proposition, the testimony failed to disclose that the executors had made oath that the settlement was made in good faith, and was for the best interest of the estate. On the second, the evidence was conflicting. The

court excluded all testimony as to the value of lands at private sale at any time.

Upon the first proposition the court charged as follows: " Though the order allows a compromise to be made, it does not allow *any* compromise. You must be satisfied that it was a judicious one, and such as a prudent man would make in his own affairs. Administrators and executors are required to use the utmost diligence in the management of estates. They are required to sue claims in their hands, and if anything is lost by their negligence they are responsible. I read to you section 2536 of the Code. You may consider the time when these notes matured in determining the amount of diligence which ought to have been used. As they did not sue, if anything was lost to the estate by that failure, they are responsible for that loss. If that compromise was all that could have been got, if it was a compromise, they are not responsible. If it was a sale of the securities, then the sale was without authority of law, but in that case if you think they got all it was possible to have got on them, then they are not responsible." ·

The jury found for the defendants except as to the fund still in the hands of the executors, about which there was no controversy.

The complainants moved for a new trial upon numerous grounds, but so far as material, besides the usual grounds · of verdict contrary to evidence, to law, etc., they may be condensed into the following :

1st. Because the court erred in the above charge.

2nd. Because there was error in this, that the charge was calculated to direct the attention of the jury exclusively to the transaction of 1869.

3rd. Because the court erred in rejecting all evidence as to the value of the mortgaged land at private sale at any time.

4th. Because the court erred in qualifying certain requests to charge.

What the requests were, thus qualified, it is not necessary to set forth, as the first head-note disposes of the whole matter without passing upon the numerous principles involved.

The motion was overruled, and complainants excepted.

JAMES A. HARLEY, by brief, for plaintiffs in error: As to private sale by executors, Code, §§2448, 2555, 2558. Opinion on evidence intimated, Code, §3248 ; 58 *Ga.*, 49 ; 51 *Ib.*, 128 ; 42 *Ib.*, 534 ; 55 *Ib.*, 288 ; 50 *Ib.*, 157 ; 11 *Ib.*, 637 ; 56 *Ib.*, 365, 503, 527 ; 39 *Ib.*, 597. Order of ordinary invalid, Code, §§2538, 2539. Charge not warranted by evidence, 58 *Ga.*, 595 ; 50 *Ib.*, 203 ; 51 *Ib.*, 250, 289 ; 52 *Ib.*, 632 ; 48 *Ib.*, 44 ; 57 *Ib.*, 81. Sale of securities illegal, 40 *Ga.*, 363, 410 ; 46 *Ib.*, 34. Charge excludes part of evidence, 50 *Ga.*, 251. Conclusion of witness inadmissible, 55 *Ga.*, 470 ; 58 *Ib.*, 109.

C. W. DuBOSE, for defendants : Complainants do not offer to refund, Code, §§2537, 2539.

BLECKLEY, Justice.

In a certificate appended to the motion for a new trial, the judge certifies that "Both counsel did agree that the only question for the jury was the settlement or compromise of 1869." That being the only question actually tried, we can pronounce with certainty that the verdict upon it should have been in favor of the complainants and against the executors, for there was no evidence that, in making their returns, the executors or either of them had made oath that the settlement was in good faith, and to the best interest of the parties represented. Section 2539 of the Code is as follows: "Guardians, administrators, executors, and all other persons acting in a fiduciary capacity, are authorized to compromise all doubtful debts belonging to such estates, where such settlement will advance the interests of those represented. All persons acting under the

provisions of this section, on making their returns, shall make oath that the settlements thus made were in good faith, and to the best interests of the parties thus represented : *Provided* the ordinary first make an order directing such compromise." This section is applicable to the one subject of *doubtful debts*, and is the section directly in point here. Under it, to obtain an order, agree upon terms and execute the agreement, will not consummate the matter. On making a return of the transaction to the ordinary, the prescribed oath must be taken, and then, but not till then, will the compromise be available to the executors or other trustees concerned, as *prima facie* binding upon legatees or beneficiaries. The oath, of course, is to be annexed to the return and filed with it. There might as well be no order for the compromise, as for there to be no return and oath after due time has elapsed for making the return,— which time is doubtless the same as that for making return of the other transactions of the given year, if the executors or other trustees concerned, chose to take that much time. It would always be safest, however, for fear of accidents, to return a compromise as soon as it is made, supporting the return with the required oath. In this case the return was early enough, but the oath annexed to it was not the one prescribed, being only " that the compromise of the claim on A. A. Underwood for $4,000.00 was made under order of the court of ordinary of said county, and at a regular term held the first Monday in April 1869." So much of the charge of the court excepted to as treated a compromise not duly returned and sworn to as worth anything to the executors, was erroneous. If, " the only question for the jury was the settlement or compromise of 1869," of course there should have been no charge on any other question. If there was a sale of the trust assets by the executors without authority of law, and these assets afterwards rose in value, the benefit of the advance would go neither to the purchaser nor to the executors, but to the legatees—that is, the real owners.

As what we have ruled puts the alleged compromise out

of the case as a defense, most of the points made in the record are thereby disposed of. What remains for trial is the question, what the notes and mortgage would have been worth to the complainants, had the executors committed no illegal act of commission or omission concerning them? As the executors did not pursue the law of compromise, they should be held to the law of administration. They had assets and must legally account for them. Upon the question of their value, the value of the land on which there was a mortgage lien to secure them is matter for inquiry.

2. In investigating the value of land as a mortgage security, its true value is some token of what it might sell for at public outcry; and it is difficult to arrive at the true value of anything without considering what it could probably be sold for at private sale. While the purchaser at a mortgage sale would buy publicly, he might buy for the express purpose of selling privately, and the amount of his bid might be much influenced by what the property would bring at private sale. The market value of land at private sale is thus relevant evidence, even where, as in the case of a mortgage, the sale must be public. It operates as indirect evidence of what a public sale might produce. Of course, opinions of witnesses going directly to value at public sale, are also admissible; as are their estimates of the difference between what could be realized at the one kind of sale as compared with the other.

Judgment reversed.